MAXWELL, J.,
for the Court:
¶ 1. Mississippi Code Annotated section 93-15-103 (Rev.2004) lists the circumstances when a court may terminate a parent’s rights in the best interest of the child. After her son Brandon Rathbone died in a work-related accident, Catherine LePori petitioned under section 93-15-103 to terminate the parental rights of Brandon’s biological father, Alton Welch, to prevent Welch from benefitting from the wrongful-death action she had filed. The chancery court dismissed the petition because: (1) section 93-15-103 is not applicable after a child dies; and (2) a petition to terminate parental rights is not the proper way to challenge a natural father’s right to benefit from a wrongful-death action. We affirm.
BACKGROUND FACTS
¶ 2. In 1988, LePori gave birth to an illegitimate son, Brandon. In 2001, the Department of Human Services filed a complaint against Welch to establish paternity. A judgment of paternity and order to pay child support was not entered until 2007. In March 2008, nineteen-year-old Brandon died when a sewer line he was working in collapsed.
¶ 3. A year later, in March 2009, LePori filed a petition to terminate Welch’s paternal rights. The petition was filed in the Forrest County Chancery Court, under the same cause number as the judgment of paternity. The petition alleged LePori “is entitled to terminate Welch’s parental *68 rights, posthumously, so that he will not inherit, as that term is used, from any wrongful-death claim that may be asserted.” Both LePori and Welch acknowledge that LePori did in fact file a wrongful-death action in Forrest County Circuit Court. And it was Welch’s motion to intervene in that action that caused LePori to file her termination petition.
¶ 4. Welch responded to the termination petition with a motion to dismiss. He argued the termination-of-parental-rights statute LePori sought to take advantage of could not be applied posthumously. The chancellor found Welch’s motion was well-taken and dismissed LePori’s petition. LePori timely appealed.
DISCUSSION
I. Termination of Parental Rights
¶ 5. LePori argues the chancellor failed to consider as grounds for termination the “substantial erosion” of Brandon and Welch’s relationship caused by Welch’s actions. See Miss.Code Ann. § 93-15-103(3)(f). But the grounds for termination in section 93-15-103(3) are to be considered only when the circumstances of section 93-15-103(1) are met:
When a child has been removed from the home of its natural parents and cannot be returned to the home of his natural parents within a reasonable length of time because returning to the home would be damaging to the child or the parent is unable or unwilling to care for the child, relatives are not appropriate or are unavailable, and when adoption is in the best interest of the child, taking into account whether the adoption is needed to secure a stable placement for the child and the strength of the child’s bonds to his natural parents and the effect of future contacts between them, the grounds listed in subsections (2) and (3) of this section shall be considered as grounds for the termination of parental rights. The grounds may apply singly or in combination in any given case.
Miss.Code Ann. § 93-15-103(1).
¶ 6. It is clear from the plain language of section 93-15-103—as well as the cases that have applied this section—the concern of the statute is when a parent’s rights may be terminated in order for the child to be adopted. E.g., S.R.B.R. v. Harrison County Dep’t of Human Servs., 798 So.2d 437, 445 (¶ 32) (Miss.2001) (Department of Human Services petitioned for termination of parental rights because close relatives, who had temporary custody of child, were interested in adopting child); Petit v. Holifield, 443 So.2d 874, 875 (Miss.1984) (natural mother and her new husband petitioned for adoption of minor child by husband over the objection of natural father). And as with child custody, “the best interest of the child is the paramount consideration” when deciding whether to terminate parental rights. Lauderdale County Dep’t of Human Servs. v. T.H.G., 614 So.2d 377, 385 (Miss.1992) (citing Petit, 443 So.2d at 877). Because the statute concerns the best interest of the child—not the parent’s interest in inheriting from the child—it logically follows the statute only addresses circumstances when the child is still living. Thus, the chancellor correctly concluded this statute is not to be applied posthumously.
II. Right to Inherit from Illegitimate Child
¶ 7. LePori argues the dismissal of her termination proceeding will lead to the inequitable result of Welch unjustly bene-fitting from the wrongful-death action. The Wrongful Death Act, set forth in Mississippi Code Annotated section 11-7-13 (Rev.2004), governs who may benefit from a wrongful-death action. “The provisions *69 of this section shall apply ... to the natural father on account of the death of the illegitimate child or children, and they shall have all the benefits, rights and remedies conferred by this section on legitimates, if the survivor has or establishes the right to inherit from the deceased under Section 91-1-15.” Id.
¶ 8. Mississippi Code Annotated section 91-1-15(3)(a)-c) (Supp.2011) gives the natural father of an illegitimate child the right to inherit if: (a) the parents participated in a marriage ceremony before the birth of the child; (b) there had been an adjudication of paternity or legitimacy before the child died; or (c) there had been a adjudication of paternity within a certain statutory time limit following death, which meets the statutory requirements. Additionally, the natural father must “ha[ve] openly treated the child as his, and ha[ve] not refused or neglected to support the child” in order to inherit. Miss.Code Ann. § 91-1-15(3)(d)(i) (Supp.2011).
¶ 9. The Wrongful Death Act, by incorporating section 91-1-15, addresses the inequity of a natural father of an illegitimate child benefitting from a wrongful-death action when he has failed to acknowledge and support his child. Miss.Code Ann. § 11-7-13. But it does not require the father’s rights be terminated under section 93-15-103. Instead, it imposes the duty on the father to show he meets the requirements of section 91-1-15 and is, thus, one of his child’s heirs-at-law. Miss.Code Ann. § 11-7-13.
¶ 10. So contrary to LePori’s assertion, equity did not require the chancellor to stretch section 93-15-103 beyond its intended purpose. LePori cites, as persuasive authority, New Jersey Division of Youth & Family Services v. M.W., 398 N.J.Super. 266, 942 A.2d 1 (2007), which terminated a mother’s parental rights posthumously. However, in that case, the court was faced with a parent who, after abandoning her child, sought to benefit from New Jersey’s wrongful-death statute, which, unlike Mississippi, did not prohibit recovery to a parent who fails to support the child. The New Jersey court “exercise[d][its] equitable powers in unusual circumstances” to grant termination posthumously because “there [were no] other lawful grounds to interdict her from receiving the inheritance.” Id. at 17.
¶ 11. In Mississippi, there are other lawful grounds for LePori to challenge the equity of Welch’s inheriting from Brandon. When opening Brandon’s estate, LePori could have initiated an action to determine Brandon’s heirs-at-law, following the procedures of Mississippi Code Annotated sections 91-1-27 and 91-1-29 (Rev.2004). This is the exact posture of the Mississippi cases LePori presented to the chancellor and to this court. See, e.g., Estate of Patterson v. Patterson, 798 So.2d 347, 348-50 (¶¶ 1-3, 9-16) (Miss.2001) (holding that, in action to determine deceased illegitimate child’s heirs-at-law, half-brother could not inherit because common father did not meet statutory requirements to inherit); Estate of McCoy v. McCoy, 988 So.2d 929, 931-33 (¶¶5, 9-13) (Miss.Ct.App.2008) (reversing chancellor’s finding that biological father was heir-at-law because father failed to show right to inherit under section 95-1-15(3)). Further, when Welch sought to intervene in the wrongful-death action in circuit court, LePori could have argued he had no right to intervene because he cannot show he meets the qualifications under sections 11-7-13 and 91-1-15(3). See M.R.C.P. 24(a) (procedure for intervention as of right).
¶ 12. Neither the estate proceeding pending in chancery court nor the wrongful-death action pending in circuit court is before this court on appeal. Thus, whether Welch has the statutory right to inherit *70 from Brandon and receive benefits from the wrongful-death action is outside the scope of this appeal.
CONCLUSION
¶ 13. The only issue before this court is whether section 93-15-103 can be applied to terminate a parent’s rights after his or her child has died. And the statute clearly does not contemplate posthumous application. Issues arising after a child’s death, such as who may benefit from a wrongful-death claim and who is an heir-at-law, are addressed by other statutes. Thus, the chancellor did not err in dismissing LePo-ri’s petition to terminate under section 93-15-103 because it was filed after Brandon’s death.
¶ 14. THE JUDGMENT OF THE FORREST COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, RUSSELL AND FAIR, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.